**MILLER FARMS NURSERY, INC.,** California corporation, Plaintiff–Appellant,

and

**Loren Turner, dba G & L Equipment Rental; Plaintiff,**

**Garth Sundberg, dba G & L Equipment Rental,**

v.

**NEDEGAARD CONSTRUCTION COMPANY INC., dba Nedegaard Custom Homes; Bruce A. Nedegaard, Defendants–Appellees.**

No. 02–15941.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 2003.

Decided June 26, 2003.

Before: HUG, JOHN R. GIBSON * and FISHER, Circuit Judges.

### MEMORANDUM **

Miller Farms Nursery, Inc. appeals from the district court's order granting summary judgment in favor of defendant Nedegaard Construction Co., Inc. on Miller Farms' claim that Nedegaard breached both a written and an oral agreement for work performed by Miller Farms on the Golden Bears Casino in Klamath, California between March and August, 1998. Miller Farms argues that the district court erred in concluding that Miller Farms' ac-

tion to enforce the oral agreement allegedly entered into on June 17, 1998 was barred by California's two year statute of limitations for oral contracts for the provision of services, Cal.Civ.Proc.Code § 339 (2002). Miller Farms also contends that the district court erred in deciding that the written agreement of March 9, 1998 was fully performed and not orally modified by the parties. We affirm the district court's grant of summary judgment on the oral agreement but reverse its decision on the written contract.

 Miller Farms argues that the June 17 oral agreement was a mixed contract for goods and services that should be considered primarily a sale of goods and therefore subject to the four year statute of limitations under Cal. Com.Code § 2725(1) (2002). The oral contract, as alleged by Miller Farms, was an agreement to "pave a parking lot at the Casino, which included preparation of the ground for paving, installation of curbs, bringing water to the casino building, and installing a septic system, retaining walls, landscaping and a sprinkler system." Under California law, which is controlling in this diversity case, the court must look to "the essence of the agreement" to determine whether the sale of goods or the provision of services was the predominate purpose of the contract. *See Filmservice Labs., Inc. v. Harvey Bernhard Enters., Inc.*, 208 Cal. App.3d 1297, 256 Cal.Rptr. 735, 739 (Ct. App.1989).

The district court correctly concluded that the June 17 oral agreement was an oral contract for services subject to the two year statute of limitations. Miller Farms argues that the agreement was a sale of goods because the asphalt and con-

---

* The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

crete blocks used for paving the parking lot and building the retaining wall constituted a significantly greater portion of the total cost of performance than the labor involved, relying on *Southern Tank Equipment Co. v. Zartic, Inc.*, 221 Ga.App. 503, 471 S.E.2d 587, 589 (Ga.Ct.App.1996). However, unlike *Southern Tank Equipment*, Miller Farms and Nedegaard did not contract for the sale and installation of a prefabricated product or structure; rather, they agreed to the construction of a retaining wall and the pavement of a parking lot using asphalt and decorative concrete blocks as raw materials. The essence of the oral agreement was not the sale of the asphalt and concrete blocks but rather the construction of the retaining wall and the paving of the parking lot using these raw materials.

■ Miller Farms also seeks damages for 2,160 cy of river run gravel that it claims it delivered under the March 9, 1998 written contract but for which Nedegaard never paid. Although this contract called for the delivery of 10,000 cy of gravel at $5.25 per cubic yard, Garth Sundberg, Miller Farms' Vice President, stated in his declaration that "Mr. Nedegaard, over time, significantly increased the size of the project so that the amount of rock actually hauled exceeded 20,000 cubic yards." This statement, combined with evidence of the parties' course of performance under the March 9 agreement, creates a triable issue of material fact on the question of whether the parties orally modified the March 9 contract to require the delivery of gravel in excess of 10,000 cy.

This course of performance is memorialized in a series of invoices submitted to Nedegaard which are part of the record in this case. The district court found that Miller Farms' delivery and Nedegaard's payment on Invoice 131627, dated March 20, 1998, constituted full performance of the March 9 agreement. However, invoice 131627 only describes the delivery and installation of 6,720 cy of gravel on March 20, billed at $35,280, significantly less than the 10,000 cy of gravel called for in the March 9 agreement. Furthermore, although Nedegaard sent a check for $35,280 for the payment of invoice 131627, this represents payment for only 6,720 cy of gravel, not the 10,000 cy called for in the March 9 written contract.

At the very least, a jury could conclude that both parties' performance under the March 9 contract was not complete until subsequent deliveries were made. Furthermore, the evidence shows that the parties never performed the March 9 agreement strictly according to its written terms and increased the amount of gravel delivered in the course of fulfilling their obligations under this written agreement. The second invoice, 131637, dated April 6, 1998, describes a shipment of 8,640 cy of gravel for pads for a gas station and gaming office, for which Nedegaard paid $45,360, in full satisfaction of this quantity. Miller Farms' delivery of, and Nedegaard's payment for, 8,640 cy of gravel brought the total amount of gravel delivered by April 6 to 15,360 cy. Thus, the delivery and payment accounted for in invoice 131637, and not the delivery described in invoice 131627, could be considered necessary for both parties to fully perform their obligations under the March 9 agreement. At the same time, this delivery represents an increase in the amount of gravel delivered and paid for beyond what was called for in the March 9 agreement.

The subsequent invoices catalog additional deliveries of gravel, all of which have been paid for by Nedegaard with the exception of the shipment described in 138817, which described a delivery of 1,860 cy of gravel. Therefore material issues of fact precluding summary judgment exist

with respect to whether Nedegaard is liable to Miller Farms for payment for this 1,860 cy of gravel.[1]

Each party shall bear its own costs.

AFFIRMED IN PART and REVERSED and REMANDED IN PART.

---

1. Miller Farms claims damages for 2,160 cy of gravel, including 300 cy of the gravel cataloged in invoice 131627 for which it claims Nedegaard never paid. Miller Farms argues that it only received $33,705 on this invoice and is owed the $1,575 balance on this bill. However, the record contains a copy of a check signed by Nedegaard payable to Miller Farms for $35,280. The record also contains an "aged customer register" produced by Miller Farms cataloging Nedegaard's account. This register shows a payment of $33,705 on invoice 131627 and then an adjustment made by Miller Farms in the amount of $1,575 five days later, bringing Nedegaard's balance on invoice 131627 to zero. This evidence supports the district court's conclusion that the deficiency alleged by Miller Farms seems to have been caused by a mistake in the entry of Nedegaard's $35,280 payment. Therefore, we conclude that a triable issue of fact only exists with respect to 1,860 cy of gravel.